UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAUL R., | ) | Case No.  CV 16-8576-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.**

**INTRODUCTION**

On November 17, 2016, plaintiff Raul R. filed a complaint against

defendant, the Commissioner of the Social Security Administration

("Commissioner"), seeking a review of a denial of a period of disability and

disability insurance benefits ("DIB").  The parties have fully briefed the matters in

dispute, and the court deems the matter suitable for adjudication without oral

argument.

Plaintiff presents two disputed issues for decision: (1) whether the

Administrative Law Judge ("ALJ") fully and fairly developed the record; and (2) whether the ALJ properly considered the opinion of the treating physician. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-8; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-8.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ fully and fairly developed the record but failed to properly consider the opinion of the treating physician. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Order and Opinion.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was forty-eight years old on his alleged disability onset date, and has a ninth grade education. AR at 70, 182. Plaintiff has past relevant work as a carpenter. *Id*. at 63.

On January 24, 2013, plaintiff filed an application for a period of disability and DIB due to pain in his shoulder, arm, hands, lower back, and knees, as well as a left eye problem. *Id*. at 70. The application was denied initially, after which plaintiff filed a request for a hearing. *Id*. at 83-85, 88-89.

On November 21, 2014, plaintiff, represented by counsel, appeared at a hearing before the ALJ. *Id*. at 27-32. The ALJ continued the hearing because an interpreter was not present, and he ordered a consultative examination. *See id*. On May 13, 2015, plaintiff, represented by counsel and assisted by a Spanish language interpreter, appeared and testified at the continued hearing before the ALJ. *Id*. at 33-68. The ALJ also heard testimony from Heidi Paul, a vocational expert. *Id*. at 63-66. The ALJ denied plaintiff's claim for benefits on July 10, 2015. *Id*. at 10-21.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since July 19, 2012, the alleged disability onset date. *Id*. at 12.

At step two, the ALJ found plaintiff suffered from the following severe impairments: right shoulder impingement syndrome with rotator cuff tear, status post right shoulder arthroscopy in October 2012; left shoulder impingement syndrome with rotator cuff tear; lumbar spine strain/sprain with disc herniation and radiculitis/radiculopathy; bilateral knee degenerative joint disease; right elbow lateral epicondylitis; and obstructive sleep apnea. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 14.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform less than the full range of light work, with the limitations that plaintiff could: lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally stoop, kneel, crouch, and crawl; and occasionally reach at or above the shoulders with the bilateral upper extremities. *Id*. The ALJ precluded plaintiff from climbing. *Id*.

The ALJ found, at step four, that plaintiff was incapable of performing his past relevant work as a carpenter. *Id*. at 19.

At step five, the ALJ determined that given plaintiff's age, education, work

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

experience, and RFC, there were jobs that exist in significant numbers that plaintiff could perform, including cafeteria attendant, photocopy machine operator, and parking attendant. *Id*. at 20. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act (the "Act" or "SSA"). *Id*. at 21.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

## A.    The ALJ Fully and Fairly Developed the Record

Plaintiff argues the ALJ failed to fulfill his duty to fully and fairly develop the record. P. Mem. at 2-3. Specifically, plaintiff contends the ALJ violated this duty by failing to obtain his treatment records from plaintiff's treating psychologist, Dr. Tran Phong. *Id.*

When the record is ambiguous, the Commissioner has a duty to develop the record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). This may include retaining a medical expert, ordering a consultative examination, or keeping the record open after the hearing to allow supplementation of the record. 20 C.F.R. § 404.1519a(a)[2]; *Tonapetyan*, 242 F.3d at 1150.

---

[2]    The Social Security Administration issued new regulations effective March 27, 2017. All regulations cited in this decision are effective for cases filed prior to March 27, 2017.

At the hearing, plaintiff testified Dr. Phong, a psychologist, had been treating him for fifteen to eighteen months for depression and anxiety. AR at 56. Plaintiff testified that he was taking Alprazolam to treat his anxiety. *Id*. Plaintiff's counsel stated he still needed to submit Dr. Phong's records. *Id*. at 66. Accordingly, the ALJ left the record open for seventeen days for plaintiff's counsel to obtain and submit Dr. Phong's records. *Id*. at 66-67.

Plaintiff did not submit Dr. Phong's treatment notes and the ALJ made a decision based on the existing record. The ALJ noted that, with respect to plaintiff's mental health, the record contained only a psychosocial pain evaluation, in which the physician diagnosed plaintiff with adjustment disorder with mixed anxiety and depressed mood, but did not opine any functional limitations. *Id*. at 13. Acknowledging plaintiff testified he had psychiatric treatment but did not submit Dr. Phong's treatment records, the ALJ determined plaintiff did not suffer from a severe mental impairment. *Id*. at 13-14. Because the ALJ did not find the record ambiguous, there was no duty to develop the record.

Even though the ALJ did not specifically find the record was inadequate or ambiguous, he noted that, despite plaintiff's testimony, there was no evidence that plaintiff received psychiatric treatment. *Id*. at 13. But assuming this was sufficient to establish ambiguity, the ALJ fulfilled his duty to fully and fairly develop the record by keeping it open for seventeen days after the hearing to allow plaintiff to supplement it. *Id*. at 66-67; *see Tonapetyan*, 242 F.3d at 1150 (an ALJ may discharge his duty to develop the record by keeping the record open for supplementation); *Mojarro v. Berryhill*, 2017 WL 1166266, at *4 (E.D. Cal. Mar. 29, 2017) (the ALJ discharged his duty to develop the record by allowing plaintiff to supplement the record); *Bundy v. Colvin*, 2013 WL 3449465, at *2 (C.D. Cal. Jul. 9, 2013) (the ALJ fulfilled his duty to fully and fairly develop the record by leaving the record open for 30 days to allow plaintiff to submit additional records).

1  Accordingly, even assuming the ALJ had a duty to develop the record, the
2  ALJ fulfilled such duty.

3  **B.    The ALJ Failed to Properly Consider the Opinion of the Treating**
4  **Physician**

5       Plaintiff argues the ALJ improperly rejected the opinion of treating
6  physician Dr. Khalid B. Ahmed.  P. Mem. at 4-8.  Specifically, plaintiff contends
7  the ALJ failed to give specific and legitimate reasons for discounting Dr. Ahmed's
8  opinion.  *Id*.

9       In determining whether a claimant has a medically determinable impairment,
10 among the evidence the ALJ considers is medical evidence.  20 C.F.R. §
11 404.1527(b).  In evaluating medical opinions, the regulations distinguish among
12 three types of physicians:  (1) treating physicians; (2) examining physicians; and
13 (3) non-examining physicians.  20 C.F.R. § 404.1527(c); *Lester v. Chater*, 81 F.3d
14 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion
15 carries more weight than an examining physician's, and an examining physician's
16 opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*,
17 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R.
18 § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally given the
19 greatest weight because the treating physician is employed to cure and has a greater
20 opportunity to understand and observe a claimant.  *Smolen*, 80 F.3d at 1285;
21 *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

22       Nevertheless, the ALJ is not bound by the opinion of the treating physician.
23 *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the
24 ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,
25 81 F.3d at 830.  If the treating physician's opinion is contradicted by other
26 opinions, the ALJ must provide specific and legitimate reasons supported by
27 substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific
28

and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. <u>Treating Physicians</u>[3]

*Dr. Harvey Chou*

Dr. Harvey Chou, an orthopedic surgeon, treated plaintiff from August 2012 through approximately May 2013. *See* AR at 280, 442. At the initial examination, plaintiff complained of bilateral shoulder and arm pain. *See id.* at 280. Dr. Chou observed plaintiff had tenderness to palpation in the shoulders, a positive Hawkins test in both shoulders, a positive Neers test in the right shoulder, and positive abduction internal rotation in both shoulders. *Id.* X-rays of the shoulders showed a downward sloping acromion but the acromioclavicular joints looked "okay." *Id.* Based on the initial examination, Dr. Chou diagnosed plaintiff with bilateral shoulder rotator cuff tendonitis, worse on the right, and recommended bilateral shoulder injections. *See id.* For his right shoulder, plaintiff preferred surgery to Cortisone shots because he wanted to treat, rather than mask, the pain. *See id.* at 277.

Following plaintiff's request for surgery, Dr. Chou obtained an MRI of the right shoulder which showed, among other things, that plaintiff had a full thickness

---

[3] In addition to Dr. Chou and Dr. Ahmed, plaintiff was also treated by Dr. Thomas J. Phillips, an orthopedic surgeon. The administrative record, however, does not include Dr. Phillips' treatment notes. It only includes some workers' compensation forms from Dr. Phillips, which indicated plaintiff was temporarily totally disabled due, in part, to a rotator cuff tear in his left shoulder. AR at 752-55.

8

tear of the distal supraspinatus tendon involving the anterior fibers and tendinosis/partial interstitial tear involving the posterior fibers of the supraspinatus tendon. *See id*. at 291-92. Based on the MRI, Dr. Chou re-diagnosed plaintiff with right shoulder rotator cuff tear, right shoulder impingement, and right shoulder biceps tendonitis. *See id*. at 370. On October 16, 2012, Dr. Chou performed a right shoulder arthroscopy with rotator cuff repair, right shoulder arthroscopy with subacromial decompression, and right shoulder open biceps tenodesis. *Id*. at 370-71. Dr. Chou observed plaintiff's right shoulder was doing well post surgery. *Id*. at 253, 262.

Subsequent to the right shoulder surgery, plaintiff complained of knee, elbow, left shoulder, leg, and low back pain. *See id*. at 257, 259-60, 283. Dr. Chou observed plaintiff had pain and tenderness in those areas and ordered MRIs. *See id*. at 255, 257, 259. An MRI of the left knee showed mild to moderate medial compartment chondromalacia and early osteoarthritic changes of the medial compartment. *Id*. at 288. An MRI of the lumbar spine showed plaintiff had: congenital mild central canal stenosis; multilevel 4-5 mm posterior disc protrusions and/or posterior disc/end plate osteophyte complexes from L2-L3 inferiorly through L5-S1 with moderate to severe central canal stenosis and neural foraminal stenosis; and multilevel degenerative disc disease of the four lumbar levels, with edema in the L4-L5 disc space. *Id*. at 283-84. Insurance denied Dr. Chou's requests for a left shoulder and right elbow MRI.[4] *See id*. at 255, 257. Dr. Chou opined plaintiff required surgery in his left shoulder and had lateral epicondylitis in the right elbow. *See id*. at 257. In February 2013, Dr. Chou learned that he was only authorized to treat plaintiff's right shoulder and workers' compensation

---

[4] Although the records do not expressly state that Dr. Chou's request for a right elbow MRI was denied, subsequent to the request, Dr. Chou was informed he was only authorized to treat plaintiff's right shoulder. *See* AR at 253.

physicians would treat plaintiff's other complaints. *Id*. at 253.

*Dr. Khalid Ahmed*

Dr. Khalid Ahmed, an orthopedic surgeon, treated plaintiff from November 2013 through at least September 2014, in connection with his workers' compensation claim. *See id*. at 519-31, 578-84. At the initial visit, Dr. Ahmed observed that plaintiff had, among other things: an abnormal gait; decreased range of motion, tightness, and spasm in the cervical spine; decreased range of motion, tenderness, positive impingement test, and decreased muscle strength in the shoulders; subacromial grinding and clicking in the left shoulder; decreased range of motion, decreased strength, and tenderness at the lateral epicondyle of the right elbow; decreased range of motion, positive straight leg raise test on the right, spasm, and facet joint tenderness at three levels in the lumbar spine; hypoesthesia at the anterolateral aspect of the foot and ankle facet; muscle weakness in the right foot and knees; and positive McMurray's and Apely's tests and medial and lateral joint line tenderness in the knees. *See id*. at 524-28. Dr. Ahmed also reviewed the MRI of the lumbar spine ordered by Dr. Chou, an MRI of the left shoulder ordered by Dr. Bryan Aun discussed below, and an electromyography ("EMG") study of the lumbar spine. *See id*. at 528.

Based on the initial physical examination, plaintiff's history, and images, Dr. Ahmed diagnosed plaintiff with: right shoulder, status post scope cuff repair; left shoulder strain/sprain, cuff tear; left knee strain/sprain with degenerative joint disease; right knee strain/sprain; lumbar spine strain/sprain with herniated lumbar disc from L2-S1 with radiculitis/radiculopathy, right greater than left; and right elbow lateral epicondylitis. *Id*. at 528. Dr. Ahmed requested authorization for an MRI of the right shoulder, MRI of the right knee, and physical therapy, as well as plaintiff's treatment records with Dr. Chou and Dr. Aun. *See id*. at 529. Dr. Ahmed opined plaintiff was temporarily totally disabled but could work with the

following limitations: no lifting over twenty pounds; no forceful pulling or squeezing with the right arm; no overhead work with the shoulders; no standing or walking over thirty minutes; no repeated bending or stooping; no sitting over forty minutes; and no repetitive kneeling, squatting, and climbing. *Id*. at 530.

During plaintiff's monthly visits, in addition to the same objective physical findings Dr. Ahmed observed during the initial examination, Dr. Ahmed also observed that plaintiff had, among other things, a positive Spurling's test in the cervical spine and positive Tinel's and Phalen's tests in the wrists and hands. *See, e.g., id*. at 543. Dr. Ahmed ordered an MRI of the right knee which showed plaintiff had: an anterior cruciate ligament sprain; bone island in the medial tibial condyle; Wiberg type 2 patella showing lateral subluxation; degenerative arthritic changes with marginal osteophytes and spiking of tibila spine; and small knee joint effusion, fluid extending into the recesses of suprapatellar bursa. *Id*. at 477-78. Although it is unclear whether Dr. Ahmed ever received Dr. Chou's or Dr. Aun's treatment records as requested, he did review Dr. Manuel Anel's Orthopedic Evaluation, dated January 20, 2014, which discussed their notes. *See id*. at 545.

Citing the exhaustion of non-operative treatment and non-responsiveness to conservative measures, Dr. Ahmed requested authorization for left shoulder scope arthroscopic surgery with subacromial decompression acromioplasty rotator cuff repair. *See id*. at 549-50. After waiting for authorization for five months, Dr. Ahmed changed his treatment plan and requested ultrasound guided steroid injections to both shoulders instead. *Id*. at 580. Dr. Ahmed also requested authorization for epidural steroid injections in the lumbar spine. *See id.*

On September 10, 2014, Dr. Ahmed completed a Medical Opinion re Ability do Work-Related Activities (Physical). *Id*. at 586-88. In the opinion, Dr. Ahmed opined plaintiff could: lift and carry less than ten pounds; stand and walk less than two hours in an eight-hour workday; and sit less than two hours in an eight-hour

workday; and sit or stand for fifteen minutes before needing to change positions. *Id*. at 586. Dr. Ahmed also opined plaintiff needed to walk for twenty minutes every 15-20 minutes; needed to be able to shift at will from sitting or standing/walking; would need to lie down twice each workday at unpredictable intervals; could never twist, stoop, crouch, or climb; and had environmental restrictions. *Id.* at 587-88. Finally, Dr. Ahmed opined plaintiff's reaching, handling, and pushing/pulling abilities were affected by his impairment. *See id*. at 587. Dr. Ahmed cited his examination findings and diagnostic imaging as support for his opinion. *See id*. at 587-88.

## 2. Examining Physicians

### *Dr. Robere J. Missirian*

Dr. Robere J. Missirian, an orthopedist, examined plaintiff on May 20, 2013 in connection with his workers' compensation claim. *Id*. at 381-91. Dr. Missirian observed plaintiff had biciptal groove tenderness, positive impingement and Yergason's test in the left shoulder, and decreased range of motion in the shoulders, more on the left. *See id*. at 384. Based on his examination, review of Dr. Aun's treatment notes, and diagnostic imaging of the right shoulder, left knee, right elbow, and left shoulder,[5] Dr. Missirian opined plaintiff suffered from left shoulder impingement syndrome with rotator cuff tear. *Id*. at 385-88. Due to plaintiff's unresponsiveness to conservative care, Dr. Missirian recommended plaintiff undergo left shoulder arthroscopy with subacriomal decompression followed by physical therapy. *See id*. at 389.

---

[5] Dr. Missirian reviewed an MRI of the left shoulder dated February 28, 2013. AR at 388; 486. The MRI showed plaintiff had a full thickness tear of the supraspinatus tendon, which was retracted by three centimeters and associated 25% - 50% muscle bulk atrophy; subscapularis tendinosis; diminutive long head of the biceps tendon; and meso type os acromiale with mild acromioclavicular joint arthrosis. *See id*.

*Dr. Soheila Benrazavi*

Dr. Soheila Benrazavi, an internist, examined plaintiff on July 1, 2013 in connection with plaintiff's workers' compensation case. *Id*. at 407-12. Dr. Benrazavi observed limited range of motion in plaintiff's back, no tenderness in the midline or paraspinal areas, a negative straight leg test, and normal range of motion in all his extremities. *See id*. at 409-10. Dr. Benrazavi reviewed MRIs of both shoulders and the lumbar spine, noting that the MRI of the right shoulder was done before plaintiff's surgery. *See id*. at 411. Dr. Benrazavi also noted that she was surprised that plaintiff exhibited normal range of motion in the shoulders. *See id.* Based on the examination and diagnostic images, Dr. Benrazavi opined plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; stand and walk up six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and climb and stoop occasionally. *See id.* at 411-12.

*Dr. Manuel Anel*

Dr. Manuel Anel, an orthopedist, examined plaintiff on January 20, 2014 in connection with plaintiff's worker's compensation case. *Id*. at 685-711. Dr. Anel observed plaintiff had, among other things: tenderness, decreased range of motion, and muscle strength deficit in the shoulders; a positive drop arm test on the left; pain over the right lateral epincondyle; slight hypersensitivity, tenderness, spasm, and decreased range of motion in the lumbar spine; and complaints of global tenderness in the knees but no focal areas. *See id*. at 693-96. The remaining objective findings were normal, including a negative straight leg raise, normal range of motion in the knees, and a normal gait. *See id.* at 692-96. Dr. Anel also reviewed plaintiff's treatment records, diagnostic images, and deposition testimony. *See id*. at 697-705.

Dr. Anel diagnosed plaintiff with: (1) cervical spine sprain/strain, mild; (2) status post right shoulder, arthroscopic rotator cuff repair, subacromial

decompression, and open biceps tenodesis; (3) left shoulder tendinosis/tendinitis, with probable rotator cuff tear; (4) lateral epicondylitis, right elbow; (5) lumbar spine sprain and strain superimposed upon degenerative disc disease per MRI scan, with subjective complaints of lower extremity radicular pain; (6) bilateral knee arthrosis/arthritis; and (7) bilateral heel bone pericalcaneal bursitis. *Id*. at 705. Dr. Anel opined that plaintiff's shoulder injuries were work-related, his back injury was possibly work-related, and his remaining impairments were not work-related. *See id*. at 707-09. Accordingly, Dr. Anel opined future treatment options for plaintiff's shoulders and back, consisting of medication, cortisone injections, and physical therapy, as well as left shoulder surgery. *Id*. at 709. Dr. Anel opined that, in the event of an acute or prolonged flareup of right shoulder symptoms, plaintiff may require additional surgery. *See id*. Further, Dr. Anel opined plaintiff had the following work restrictions: no heavy lifting and prolonged work above shoulder level with the right upper extremity; no heavy lifting, forceful or repeated pushing or pulling, and no work at or above shoulder level with the left upper extremity; no very heavy lifting; and no repeated bending and stooping.[6] *Id*. at 707.

*Dr. H. Harlan Bleecker*

Dr. H. Harlan Bleecker, an orthopedist, examined plaintiff on January 6, 2015. *Id*. at 722-34. Dr. Bleecker observed plaintiff had a normal gait; decreased range of motion in the neck, back, and shoulders; a positive drop sign and a positive giving-away sign in both shoulders, normal strength in the upper extremities, and stocking hypalgesia in the entire right lower extremity. *See id*. at 723-25. The remainder of the findings were within normal limits, including plaintiff's ability to kneel and squat. *See id*. Dr. Bleecker reviewed two treatment

---

[6]    Because Dr. Anel examined plaintiff in connection to a workers' compensation claim, the terminology does not correspond to social security disability definitions.

14

notes from Dr. Ahmed and Dr. Anel's opinion and no diagnostic images. *See id.* at 726. Dr. Bleecker diagnosed plaintiff with torn rotator cuff bilateral shoulders, status post surgical repair on the right, with recurrence. *Id.* at 726. Based on the examination, Dr. Bleecker opined plaintiff could: lift twenty pounds occasionally and ten pounds frequently; sit, stand, and walk six hours in an eight-hour day; did not required the use of a cane for ambulation; occasionally reach overhead with either upper extremity; frequently reach in other directions; handle, finger, push, and pull with both upper extremities; occasionally balance, stoop, kneel, crouch, or crawl; and walk a block at a reasonable pace on rough or uneven surfaces. *Id.* at 723, 727. Dr. Bleecker also opined plaintiff both could climb a few steps at a reasonable pace with the use of a handrail and could not climb stairs. *Id.* at 727.

In addition to the written evaluation, Dr. Bleecker also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form ("Form Opinion") and Need for Assistive Hand-Held Device for Ambulation form ("Ambulation Opinion") the same day. *Id.* at 728-34. Both the Form Opinion and Ambulation Opinion contained inconsistencies with the written evaluation. In the written evaluation, Dr. Bleecker opined that plaintiff could sit, stand, and walk for a total of six hours. *Id.* at 727. But, in the Form Opinion, Dr. Bleecker opined that although plaintiff could sit, stand, and walk for six hours, he could only sit, stand, and walk for 30-40 minutes at a time. *See id.* at 729. Dr. Bleecker also again concluded plaintiff could never climb stairs in the Form Opinion. *Compare id.* at 727, 731, and 733. Finally, although Dr. Bleecker opined that plaintiff did not require the assistance of a cane to ambulate in the written evaluation and Form Opinion, in the Ambulation Opinion he opined plaintiff required the assistance of a cane for prolonged ambulation, defined as distances greater than 100 yards or one block, due to "mild D&O" in both knees. *Compare id.* 727, 729 and 734. Dr. Bleecker further opined that plaintiff was able to stand and walk without an

assistive device for at least two hours a day but not six hours. *See id*. at 734.

### 3. <u>Non-Examining Physician</u>

Dr. Richard Surrusco, a state agency physician, reviewed plaintiff's medical records through May 2013 and Dr. Benrazavi's opinion. *See id*. at 75-76. Based on his review, Dr. Surrusco opined plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally push and pull with his upper left extremity; and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. *Id*. at 78. Dr. Surrusco precluded plaintiff from climbing ropes, ladders, and scaffolds, and from concentrated exposure to hazards. *See id*. at 78-79.

### 4. <u>Other Medical Sources</u>

Although the record does not contain any treatments notes from Dr. Bryan Aun, a chiropractor, it reflects that Dr. Aun treated plaintiff for an unspecified period of time beginning in January 2013.[7] *See id*. at 698. Dr. Aun prescribed plaintiff with a TENS unit and lumbar brace, ordered diagnostic imaging of the left shoulder and right elbow, and ordered an EMG and nerve conduction studies ("NCS"). *See id*. at 203, 415-20, 486-88, 499-502, 698. The EMG and NCS showed that plaintiff had possible right superficial peroneal sensory neuropathy, L-4-L-5 radiculopathy, and L5-S1 radiculopathy. *See id*. at 419. The MRI of the left shoulder showed a full thickness tear of the supraspinatus tendon, which was retracted by three centimeters and associated 25% to 50% muscle bulk atrophy, subscapularis tendinosis, diminutive longhead of the biceps tendon, and meso type os acromiale with mild acromioclavicular joint arthrosis. *Id*. at 486. The right elbow MRI reflected mild lateral epicondylitis. *Id*. at 487-88.

---

[7]    In claims filed prior to March 27, 2017, a chiropractor is not considered an acceptable medical source. *See* 20 C.F.R. § 404.1513(d)(1).

### 5. __The ALJ's Findings__

As discussed above, the ALJ determined plaintiff could not climb but had the RFC to: lift and carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally stoop, kneel, crouch, and crawl; and occasionally reach at or above the shoulders with both upper extremities. *Id*. at 14. In reaching his RFC determination, the ALJ gave great weight to Dr. Anel's, Dr. Benrazavi's, and Dr. Bleecker's opinions, weight to Dr. Surrusco's opinion, and little weight to Dr. Ahmed's opinion. *Id*. at 17-18.

The ALJ gave great weight to Dr. Anel's opinion because it was the most comprehensive in the file, he reviewed plaintiff's medical records, and he examined plaintiff. *Id*. at 17. The ALJ, however, did not adopt Dr. Anel's left shoulder limitations because they were inconsistent with the objective evidence. *Id*. The ALJ gave great weight to Dr. Benrazavi's opinion because it was supported by clinical findings and explanations. *Id*. Other than his opinion about plaintiff requiring an assistive device for prolonged ambulation, the ALJ gave great weight to Dr. Bleecker's opinion because it was generally consistent with the medical records. *Id*. The ALJ gave weight to Dr. Surrusco's opinion because, other than failing to include limitations for plaintiff's right shoulder, it was generally consistent with the record. *Id*. at 17-18.

The ALJ rejected Dr. Ahmed's opinion because it was inconsistent with his initial report, consisted of checkboxes without adequate explanation, was contrary to the objective findings as whole, and was inconsistent with the opinions of Dr. Anel, Dr. Benrazavi, and Dr. Bleecker. *Id*. at 18. These reasons were not all specific and legitimate and supported by substantial evidence.

The ALJ's first reason for giving little weight to Dr. Ahmed's opinion was because it was inconsistent with his initial report. *Id*. Inconsistency with an initial

assessment may be a specific and legitimate reason to discount a physician's opinion. *Amaral v. Berryhill*, 707 Fed. Appx. 487, 488 (9th Cir. 2017). But when the differences are due to factors such as a deterioration in condition or new evidence, inconsistencies are no longer a sufficient reason to reject the second opinion. *See id*. (deteriorating condition may be a basis for a changed opinion if supported by substantial evidence); *Bostwick v. Colvin*, 2015 WL 12532350, at *3 (S. D. Cal. Mar. 30, 2015) (ALJ properly considered physician's second opinion over preliminary opinion because it was based on new and more complete evidence); *Gutierrez v. Astrue*, 2013 WL 2468344, at *15 (N.D. Cal. June 7, 2013) (ALJ erred when he failed to consider whether physician's opinion changed over time due to plaintiff's worsened condition).

Here, Dr. Ahmed opined more restrictive limitations in his September 2014 opinion than in his initial November 2013 assessment. Specifically, Dr. Ahmed opined plaintiff: could lift and carry no more than ten pounds as opposed to twenty pounds: could only stand or walk fifteen minutes at a time as opposed to thirty minutes; could only sit 15 minutes at a time as opposed to forty; needed to walk for twenty minutes every fifteen to twenty minutes; needed to lie down twice a day; and needed to be able to shift positions at will. *Compare* AR at 530 and 586-88. Between the initial examination and September 2014 opinion, in addition to treating plaintiff on a monthly basis, Dr. Ahmed reviewed an MRI of the right knee, as well as Dr. Anel's summary of plaintiff's treatment notes and diagnostic images. *See id*. at 477-78, 545, 697-705. Although the objective examination findings appeared to have remained consistent throughout the treatment period, it was possible and reasonable that Dr. Ahmed opined greater restrictions in September 2014 based on the additional records reviewed and plaintiff's symptoms throughout the period. Nevertheless, because the ALJ's interpretation was also reasonable, inconsistency with the initial report was a specific and legitimate

reason to reject the lifting, standing, and walking limitations.

Dr. Ahmed's opined upper extremity limitations, however, remained consistent in both opinions, to the extent specified at all. Inconsistency between the initial assessment and September 2014 opinion would therefore not be a specific and legitimate basis for rejecting those limitations. Nor did the ALJ specifically cite inconsistency as a basis for rejecting these limitations.

The ALJ's second reason for rejecting Dr. Ahmed's opinion was because it consisted mainly of checkboxes without adequate explanation. AR at 18; *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996) (opinions in the form of "check-off reports" may be rejected for lack of explanation of the bases for their conclusions). In the checkbox form opinion, Dr. Ahmed cited examination findings, MRIs, herniated disks in the lumbar spine, recurrent rotator cuff tear, and pain to support his opinion. *See* AR at 586-88. Although not expansive, Dr. Ahmed provided explanations to support his opinion. Even if those explanations were inadequate, the ALJ still erred because he failed to recognize that Dr. Ahmed's checkbox form opinion was based on multiple physical examinations and records. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (ALJ erred in rejecting the opinions expressed in check-box form as inadequately supported when the opinions were supported by a treating relationship and numerous records). The treatment notes documenting objective findings and diagnostic images relied on by Dr. Ahmed were all part of the administrative record. Thus, although the explanations themselves were not expansive narratives, the opinion was supported by documentation.

The ALJ's third reason for rejecting Dr. Ahmed's opinion was because it was contrary to the objective findings as a whole. AR at 18; *see Archer v. Colvin*, 618 Fed. Appx. 343, 344 (9th Cir. 2015) (ALJ properly rejected the opinions of the physicians because they were inconsistent with their objective findings). Contrary

to the ALJ's finding, the objective findings as a whole could support Dr. Ahmed's opinion. For example, plaintiff had multiple positive single leg raise tests and MRIs showed disc protrusions, stenosis, and radiculopathy in the lumbar spine, a rotator cuff tear in the left shoulder, and lateral epicondylitis in the right elbow. *See, e.g.,* AR at 283-84, 415-17, 419, 486-88, 543. Nonetheless, the ALJ is responsible for resolving conflicts in the medical evidence and, for the most part, his interpretation of the medical evidence was reasonable. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008).

But again, Dr. Ahmed's upper extremity limitations were an exception. There was no dispute plaintiff had surgery on the right shoulder and there continued to be findings of tenderness, decreased range of motion, and decreased strength after the surgery. *See* AR at 370-71, 543, 693, 724. A left shoulder MRI showed that plaintiff suffered from a full thickness tear of the supraspinatus tendon, which was retracted by three centimeters and associated muscle bulk atrophy, as well as a possible partial thickness articular surface tear and partial thickness biceps tendon tear. *Id.* at 486. Every physician except for one observed plaintiff had decreased range of motion, decreased muscle strength, and various positive tests in the left shoulder. *See, e.g., id.* at 257, 524, 384, 693, 724. Conservative treatment of the left shoulder was ineffective and multiple physicians opined plaintiff required surgery. *See id.* at 257, 389, 549-50, 709. Thus, Dr. Ahmed's upper extremity limitations were supported by the objective evidence overall.

Finally, the ALJ also rejected Dr. Ahmed's opinion because it was inconsistent with Dr. Anel's, Dr. Benrazavi's, and Dr. Bleecker's opinions. Although Dr. Ahmed's opinion was inconsistent overall with each of their opinions, the ALJ's finding was flawed. The ALJ gave great weight to Dr. Anel's, Dr. Benrazavi's, and Dr. Bleecker's opinions and treated them as one. But each

examining physician actually offered opinions inconsistent with the others'
opinions and, other than one aspect each of Dr. Anel's and Dr. Bleecker's opinion,
the ALJ failed to explain why he rejected portions of each of the examining
physicians' opinions.  Because inconsistency with other physicians' opinions is
relevant only when the other physicians' opinions are accepted and supported by
substantial evidence, the ALJ cannot reject Dr. Ahmed's opinion as inconsistent
with Dr. Anel's, Dr. Benrazavi's, and Dr. Bleecker's opinions without first
explaining which portions of their opinions he accepts and which he rejects and
why.[8]

      Moreover, on an individual level, not all of the ALJ's reasons for giving
great weight to the examining physicians' opinions were supported by substantial
evidence.  There cannot be substantial evidence to reject Dr. Ahmed's opinion on
the basis of inconsistency with other opinions when those opinions were
unreliable.[9]

---

[8]   Although plaintiff does not raise this as an argument, the ALJ likewise failed
to adequately explain his RFC determination.  As discussed above, although the
ALJ gave great weight to Dr. Anel's, Dr. Benrazavi's, and Dr. Bleecker's opinions,
they actually offered very different opinions.  It was impossible for the ALJ to
have given great weight to all of their opinions equally.  The ALJ failed to
adequately explain why he rejected portions of each of their opinions to reach his
RFC determination.  *See Ava v. Berryhill*, 714 Fed. Appx. 655, 656 (9th Cir. 2017)
(ALJ erred when she rejected the central parts of an opinion without explanation).
For example, Dr. Benrazavi and Dr. Bleecker opined different sit, stand, and walk
limitations, while Dr. Anel opined none.  *See* AR at 411, 707, 729.  Another
example is Dr. Anel precluded plaintiff from prolonged work above the shoulder
level on the right and no work at or above the shoulder level on the left; Dr.
Benrazavi opined no limitations with the shoulder; and Dr. Bleecker limited
plaintiff to occasional reaching overhead on both sides.  *See id*. at 411-12, 707,
727.

[9]   The ALJ did not expressly reject Dr. Ahmed's opinion on the basis that it
was inconsistent with Dr. Surrusco's opinion.  To the extent that it was implied,

With regard to Dr. Benrazavi, Dr. Ahmed was a treating physician and orthopedic surgeon while Dr. Benrazavi was an examining internist. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (noting the agency generally gives more weight to specialists than to the opinion of a medical source who is not a specialist); *Smolen*, 80 F.3d at 1285 (the opinion of a treating physician is typically given the greatest weight). Although, as the ALJ noted, an examining physician's opinion may constitute substantial evidence where it is based on independent findings, here, the ALJ ignores the fact that Dr. Benrazavi's findings were inconsistent with almost all other findings in the record, including those of Dr. Chou, Dr. Missirian, Dr. Anel, and Dr. Bleecker. Thus, the fact that Dr. Benrazavi's opinion was consistent with his own findings was not a sufficient reason to give it great weight. And therefore the fact that Dr. Ahmed's opinion was inconsistent with Dr. Benrazavi's opinion was not a reason to reject Dr. Ahmed's opinion.

The ALJ's rejection of Dr. Ahmed's opinion because it was inconsistent with Dr. Bleecker's opinion was similarly not supported by substantial evidence. The ALJ gave great weight to Dr. Bleecker's opinion because it was generally consistent with the medical records, but the ALJ failed to address a material portion of the opinion and the opinion contained multiple internal inconsistencies. The ALJ completely omitted discussion of Dr. Bleecker's standing, walking, and

Dr. Surrusco's opinion was not supported by substantial evidence. The ALJ gave Dr. Surrusco's opinion greater weight than Dr. Ahmed's opinion because it was "generally consistent with the record." *Id*. at 17. But Dr. Surrusco's opinion was based, in part, on misstatements of the medical records. Dr. Surrusco claimed a report stated plaintiff "no longer" had lateral epicondylitis when it, in fact, stated plaintiff's elbows issues were "not just" lateral enpicondylitis. *See id*. at 76, 255. Dr. Surrusco also implied that plaintiff's left shoulder MRI only showed mild acromioclavicular joint arthrosis when it showed, among other things, a full thickness tear of the supraspinatus tendon. *See id*. at 76, 486.

sitting restrictions.  While Dr. Bleecker opined plaintiff could sit, stand, and walk

for a total of six hours, he also separately opined plaintiff could only sit, stand, and

walk for 30-40 minutes at one time.  *Compare id*. at 727 and 729.  The failure to

discuss these limitations undermined the ALJ's reliance on Dr. Bleecker's opinion.

Further, although not identical, Dr. Bleecker's opinion that plaintiff requires the

ability to shift positions every 30-40 minutes was similar to, and not inconsistent

with, Dr. Ahmed's opinion that plaintiff needed to change positions every fifteen

minutes and walk every fifteen to twenty minutes.  *See id*. at 586-87.

Additionally, Dr. Bleecker opined both that plaintiff could climb a few steps

at a reasonable pace with the use of a handrail and could never climb stairs.  *See id*.

at 727, 731, and 733.  Dr. Bleecker also opined both that (1) plaintiff did not

require an assistive device for ambulation and could walk a block at a reasonable

pace; and (2) plaintiff needed the assistance of cane for prolonged ambulation,

defined as one block, and that plaintiff could not stand and walk without an

assistive device for six hours in a day.  *See id*. 727, 729 and 734.  Because of the

ambiguities, Dr. Bleecker's opinion was not reliable.  These internal

inconsistencies rendered it impossible to determine which were Dr. Bleecker's

actual opinions, and the ALJ did not address the inconsistencies.

As for Dr. Anel's opinion, the ALJ gave proper reasons for giving it great

weight.  In an attempt to reconcile the opinions and reach an RFC determination,

however, the ALJ rejected one portion of Dr. Anel's opinion that was consistent

with Dr. Ahmed's opinion – the restriction against overhead work on the left – on

the basis that the left shoulder overhead work restriction was not supported by

objective findings.  *See id*. at 17-18.  As discussed above, there were objective

findings to support this opinion.  As such, although the ALJ reasonably rejected the

majority of Dr. Ahmed's opinion on the basis that it was inconsistent with Dr.

Anel's opinion, his rejection of both Dr. Ahmed's and Dr. Anel's left upper

extremity restriction was not supported by substantial evidence.

In sum, the ALJ provided some specific and legitimate reasons for rejecting Dr. Ahmed's lifting, standing, walking, and sitting limitations, but his rejection of Dr. Ahmed's upper extremity limitations were not supported by substantial evidence. Moreover, the ALJ's finding that Dr. Ahmed's opinion should be given less weight because it was inconsistent with the other opinion evidence was not supported by substantial evidence and demonstrated the ALJ's overall discussion of the opinion evidence was flawed.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Nonetheless, it is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further

proceedings is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to properly consider Dr. Ahmed's opinion.  On remand, the ALJ shall reconsider Dr. Ahmed's opinion, and either credit his opinion or provide specific and legitimate  reasons for rejecting it. The ALJ shall also reconsider all of the medical evidence, and provide legally sufficient reasons supported by substantial evidence for rejecting any opinions. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED:  January 31, 2019

SHERI PYM
United States Magistrate Judge